IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM M. HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:11-CV-295-WKW |
| ) | |
| GOODYEAR DUNLOP TIRES ) | |
| NORTH AMERICA, LTD., *et al.*, ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| PAMELA STAFFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:12-CV-510-WKW |
| ) | |
| GOODYEAR DUNLOP TIRES ) | |
| NORTH AMERICA, LTD., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This is a products liability and personal injury case. Before the court are five motions: (1) Goodyear/Dunlop's Motion to Exclude Certain Factual and Expert Opinion Testimony of Dr. David Herrick (Doc. # 145); (2) Goodyear/Dunlop's Motion to Exclude Certain Factual and Expert Opinion Testimony of Wayne McCracken (Doc. # 146); (3) the Goodyear Defendants' Motion for Summary Judgment (Doc. # 149); (4) the Goodyear Defendants'

*Daubert* Motion to Exclude Woehrle's Expert Testimony (Doc. # 150); and (5) Plaintiffs' Motion to Strike and/or Exclude Certain Testimony of Gary Bolden (Docs. # 151 & 152). After careful consideration of the arguments of counsel, the appropriate law, and the allegations set forth in the complaint, the court finds that all motions are due to be denied.

## I.     JURISDICTION AND VENUE

The court exercises diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a). The parties do not contest personal jurisdiction or venue.

## II.     STANDARDS OF REVIEW

### A.     **Daubert Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert* and its progeny. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court made it clear that Rule 702 assigns the trial court a gatekeeping role to "ensure that any and all scientific testimony or evidence

admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 & 597 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony rests both on a reliable foundation and is relevant to the task at hand.'" (quoting *Daubert*, 509 U.S. at 596)). This gatekeeping responsibility is the same when the trial court is considering the admissibility of expert technical evidence. *Kumho Tire*, 526 U.S. at 147.

In the Eleventh Circuit, expert testimony is admissible under Rule 702 if it satisfies three broad requirements:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1999)). These requirements are known as the "qualifications," "reliability," and "helpfulness" prongs. *See id.*

When evaluating the reliability of scientific expert testimony, the trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be

applied to the facts in issue." *Daubert*, 509 U.S. at 592—93). Factors that may bear on the reliability of expert testimony include (1) whether the expert's theory can be and has been tested, (2) whether the theory has been subjected to peer review and publication, (3) whether the known or potential rate of error of the methodology is acceptable, and (4) whether the theory is generally accepted in the proper scientific community. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 593—94). These factors are not definitive, but will vary depending on the case. Indeed, the trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. At the same time, the trial court must remain mindful that "*Daubert* does not require certainty; it requires only reliability." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1198 n.10 (11th Cir. 2010). The focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

Moreover, whether the expert testimony will assist the trier of fact in understanding the evidence or a fact in issue "goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation and internal quotation marks omitted). The Fifth Circuit said it this way: Assisting the trier of fact means that "the trial judge ought to insist that a proffered expert bring to the jury more

than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

In the end, however, the court's gatekeeping role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). Where the basis of expert testimony satisfies Rule 702, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Daubert*, 509 U.S. at 596.

### B. <u>Summary Judgment Standard</u>

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). The court should grant the motion if the pleadings, together with supporting materials in the record, show that the movant is entitled to judgment as a matter of law. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists. *Id.* at 324.

A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). The modern standard requires more than a "mere scintilla" of favorable evidence. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotation marks omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not preclude summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (*per curiam*).

### III.   BACKGROUND

Viewing the evidence and the inferences from that evidence in the light most favorable to Plaintiffs, as the court must do when considering a motion for

summary judgment, *Jean-Baptiste*, 627 F.3d at 820, the court finds the pertinent factual background is as follows.

A. **Procedural History**

This case, originally filed in state court, was removed from Montgomery County Circuit Court on April 18, 2011. The court denied Plaintiff Henderson's motion to remand. (Doc. # 23.) On July 27, 2012, the court consolidated this action with *Stafford v. Goodyear Dunlop Tires North America LTD*, Case No. 3:12-cv-510, thus, adding an additional plaintiff, Pamela Stafford. (Doc. # 85.) There have been myriad discovery disputes that have been resolved. The motions for summary judgment and exclusion of expert witnesses followed.

B. **Facts**

On July 18, 2010, Plaintiffs William M. Henderson (driver) and Pamela Stafford (passenger) were involved in a motorcycle accident in Chambers County, Alabama. No other vehicles were involved. The accident occurred when Henderson lost control of the motorcycle because the rear tire blew out. (Doc. # 32 at 3.) Plaintiffs contend that the accident and resulting injuries were caused by "a sudden and catastrophic deflation" of the allegedly defective tire mounted on the rear of the motorcycle. (Doc. # 32 at 6.)

Plaintiffs filed suit against Harley-Davidson Motor Company Group LLC, Harley-Davidson Motor Company, Inc., Harley-Davidson of Montgomery, Inc.,

7

Goodyear Dunlop Tires of North America LTD, and Goodyear Tire & Rubber Company. The Harley Davidson defendants were all dismissed. (Docs. # 24 & 142.) By separate order, the court granted Defendant Goodyear Tire & Rubber Company's Motion for Summary Judgment. (Doc. # 194.) The sole remaining defendant is Goodyear Dunlop Tires North America LTD.

Plaintiff Henderson asserts four claims: Alabama Extended Manufacturers Liability Doctrine ("AEMLD"), negligence, wantonness, and breach of warranty. Plaintiff Stafford asserts three claims: AEMLD, negligence, and wantonness. Plaintiffs allege that manufacturing and design defects in the subject Goodyear tire on Henderson's motorcycle caused the accident and Plaintiffs' resulting injuries. (Doc. # 32.)

## IV.   DISCUSSION

This opinion provides a separate analysis for each pending motion. Part A examines Goodyear's two motions to exclude the testimony of Dr. David Herrick and Wayne McCracken. Part B examines Plaintiffs' motions to exclude the testimony of defense expert, Gary Bolden. Part C discusses Goodyear's *Daubert* motion to exclude Plaintiffs' expert, William Woehrle. Part D examines Goodyear's summary judgment motion.

A.   **Defendant Goodyear/Dunlop's Motions to Exclude certain Testimony of Dr. David Herrick and Wayne McCracken (Docs. # 145 & 146)**

   *1. Dr. David Herrick*

Dr. David Herrick is a medical physician, board certified in pain management and anesthesiology. (Doc. # 174-1.) He is also Plaintiff William Henderson's pain management doctor. Relevant to this case is Dr. Herrick's pain management expertise. Herrick is of the opinion that Henderson is permanently disabled due to the pain he continually suffers as a result of the injuries he received in the motorcycle accident. (Doc. # 174-2.) Further, it is his opinion that, due to the level of pain and the level of medication prescribed to Henderson for his pain, Henderson is unable to work. (Doc. # 174-3.)

Defendant Goodyear objects on hearsay grounds to many of the facts provided to Dr. Herrick, both through the medical records he reviewed and from Plaintiff himself. Goodyear argues that Dr. Herrick's opinions are unreliable under Rule 702, *Daubert,* and its progeny because the opinions are based upon these hearsay statements. Some of those "unreliable" opinions are the following:

  a. "Mr. Henderson was involved in a motorcycle accident that resulted in significant injury."
  b. "He was transported by helicopter from the accident scene to the emergency room and was subsequently hospitalized for an extended period of time in the ICU from those injuries."
  c. "His injuries included a burst compression fracture and wedge compression fractures of multiple thoracic vertebrae."
  d. "He required intubation and mechanical ventilation resulting in a subsequent tracheostomy."

(Doc. # 145 at 2.) Further opinion testimony objected to by Goodyear is the following:

   a. "Mr. Henderson experienced a significant injury to the thoracic spine from the accident resulting in extensive thoracic fusion surgery for treatment of unstable thoracic fractures."
   b. "Spinal fusion involving multiple levels of thoracic spine is a very challenging and dangerous surgery that is fraught with peril."
   c. "The purpose of the surgery, in general, is not so much to return the spine to its normal position, appearance and alignment as it is to prevent further injury and disability from instability."
   d. "Mr. Henderson experienced an injury to the left ulnar nerve."

(Doc. # 145 at 4.)   Defendant also objects to the opinion of Dr. Herrick that "Henderson is permanently disabled due to the injuries he received in the motorcycle accident and his resulting continued level of pain."  (Doc. # 145 at 5.)

   Dr. Herrick's reliance on other doctors' medical records and his patient's own statements are the type of evidence contemplated under Rule 703 because they are the type of evidence that medical doctors "reasonably rely on . . . in forming an opinion on the subject."  The advisory committee notes to Rule 703 specifically explain that a physician may rely on a wide range of sources in forming medical opinions, including facts that the doctor learns "other than by his own perception":

> [T]he rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice in line with the practice of experts themselves when not in court.  Thus, a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays.  Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses.  The physician makes life-and-death decisions in reliance

10

upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

Fed. R. Evid. 703 Advisory Committee Notes (1972). To the extent Dr. Herrick's testimony is cumulative, the court will address appropriate objections at trial. Defendant's motion to exclude certain testimony of Dr. David Herrick is denied.

### 2. *Wayne McCracken*

Wayne McCracken is an accident reconstruction expert offered by Plaintiffs. Defendant Goodyear objects to testimony relating to the sufficiency of load-bearing capacity of the subject tire, and any testimony relating to the sufficiency of the information included in the Harley-Davidson Operator's Manual. However, this portion of Defendant's motion need not to be addressed based on Plaintiffs' withdrawal of said opinions. Footnote 1 on page 2 of Plaintiffs' response states the following:

> Plaintiff hereby withdraws any opinions from Mr. McCracken relative to the topic that the subject tire did not have adequate load carrying capabilities, that the motorcycle could have been equipped with a tire with greater load carrying capabilities, and that information relative to weight distribution in the Harley-Davidson Manual was inadequate. While Mr. McCracken is qualified to give such opinions, these issues are no longer in dispute, and Plaintiff withdraws them while reserving the right to reintroduce these opinions if the Defendants raise them in the future.

(Doc. # 173 at 2, n.1.)

Goodyear further objects to McCracken's testimony relating to maintaining control of a motorcycle when a sudden loss of air situation occurs, or a sudden air-

out in a tire occurs.  (Doc. # 146 at 5.)  Defendant argues that McCracken's testimony is unreliable and not supported by any facts.  McCracken formulated his opinions based on his investigation of the accident scene and the motorcycle itself, and his opinion satisfies the *Daubert* requirements.  Moreover, McCracken is certified as a Professional Engineer in four states (Alabama, Kentucky, Mississippi, and Georgia) and earned his engineering degree from Duke University.  He held an American Motorcyclist Association racing license for numerous years and raced motorcycles professionally for five years.  His experience includes over forty years in the motorcycle industry.  He took courses in accident reconstruction at the University of North Florida.  He has been an active member of the Society of Automotive Engineers (SAE) for over twenty years, and within that organization he is a member of the accident reconstruction subcommittee which peer-reviews submitted publications.  As a member of the subcommittee, McCracken regularly reviews and approves articles which address side forces concerning "stiffness" of pneumatic tires which suffer different failure modes.  He has investigated over 2,000 motor vehicle wrecks, and reconstructed 400–500 accidents which resulted from tire failures.

      To the extent that McCracken's opinions have gaps, Defendant may counter those opinions through cross-examination and the presentation of contrary evidence.  *See Daubert*, 509 U.S. at 596.  McCracken's opinions have been

formulated in a scientifically and methodologically reliable fashion. Goodyear's motion to exclude certain opinion testimony of Wayne McCracken is moot as it pertains to the opinions withdrawn by Plaintiffs, and is denied as to the remaining opinions.

**B.     Plaintiffs' Motions to Strike and/or Exclude Certain Testimony of Mr. Gary Bolden (Docs. # 151 & 152)**

Plaintiffs argue that Bolden's experience is not sufficient to establish admissibility and that Bolden's opinion is not reliable under 702 and *Daubert*. Plaintiffs take issue with the fact that Bolden is not an expert specifically in motorcycle tires, alleging that this lack of experience makes him unqualified to testify in this case. Plaintiffs' disagreement with Bolden's opinion does not mean Bolden got the facts wrong, as Plaintiffs allege in their motion. (Doc. # 151 at 11.) Bolden observed facts – the condition of the tire at issue – and then rendered an opinion of the cause of those observed factual conditions. The extent to which these conclusions are speculative may be established by cross-examination and other evidence in the case.

Bolden is qualified to give his opinions in this case pursuant to *Daubert*. "[S]o long as the expert is at least minimally qualified, gaps in his qualifications generally will not preclude admission of his testimony, as this relates more to witness credibility and thus the weight of the expert's testimony, than to its admissibility." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293,

13

1304 (N.D. Ga. 2008). Indeed, "an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *Id.* (citations omitted). Bolden possesses the requisite experience to offer his opinions. He is an engineer with forty-four years of tire design and manufacturing experience and he has performed forensic tire failure analysis for more than thirty-five years, including on numerous bias ply constructed tires like the subject tire in this case. He has published multiple peer reviewed research articles on forensic tire failure analysis, including on the same principles he employed in reaching his opinions regarding the subject tire in this case. Plaintiffs may address any related issues through cross-examination. Accordingly, Plaintiffs' motion to exclude the testimony of Gary Bolden is denied.

C. **Defendant's Motion to Exclude the opinion testimony of expert William Woehrle on the basis of *Daubert* (Doc. # 150)**

The specific *Daubert* factors aid a trial judge in determining reliability; however, sometimes other questions may be more useful. *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citing *U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). As to methodology, the court finds that "[a] trial setting . . . will provide the best operating environment for the triage which *Daubert* demands." *Rafaela Cortes-Irizarry v. Corp. Insular De Seguros*, 111 F. 3d 184, 188 (1st Cir. 1997).

Goodyear contends that William Woehrle is not qualified to testify as to design defects of the subject tire and that his opinions are not based on a reliable methodology. (Doc. #150-1 at 8-9.) Defendant bases this argument on the fact that Woehrle has never designed a tire, would not hire himself to design a tire, does not have an engineering degree, and was not considered a design engineer by Uniroyal, the tire manufacturing company that employed him. (Doc. # 150 at 4-5.)

Woehrle's extensive experience is focused directly on defective tires. He worked for many years at Uniroyal analyzing and testing tire failure for all manufacturing, research, and development company-wide. Though Woehrle never designed and created a tire himself,[1] he has extensive knowledge and experience determining how tires fail and how to properly manufacture a good, working tire. His ability to create a tire is not necessary, as Defendant implies.

Defendant relies heavily on the Tenth Circuit's recent opinion affirming a district court's exclusion of Woehrle's testimony. *See Ho v. Michelin N. Am., Inc.*, No. 11-3334 2013 WL 1277023 (Mar. 29, 2013) (affirming *Ho v. Michelin N. Am., Inc.*, No. 08-1282-JTM 2011 WL 3241466 (July 29, 2011)). Woehrle has testified in many cases throughout the years, and there is a distinction between the facts in the *Ho* case and the facts here. In *Ho*, the plaintiff asserted a claim of failure to warn, a subject about which the Kansas district court found Woehrle was not

---

[1] Notably, Woehrle has built a "production tire" before.

qualified to speak. In this case, Plaintiffs are not asserting a claim for failure to warn. But the Kansas District Court also excluded Woehrle's testimony on tire design. The *Daubert* motion was granted in *Ho*, which resulted in a grant of summary judgment in favor of Michelin, based on the plaintiff's inadequate response to the defendant's *Daubert* motion. Indeed, the *Ho* Court commented on the plaintiff's failure to prove that Woehrle's testimony met the *Daubert* standards because there was an improper and irrelevant focus on the defense expert's qualifications in comparison to Woehrle's qualifications. *Id.* at *3.

Woehrle's vast experience in the testing and manufacture of tires inherently involves design issues and recommendations that would change a design of a tire based on its poor testing, though Woehrle is not a tire designer himself. Based upon the parties' representations, there is very limited literature available that is specific to this type of tire failure. Furthermore, in *McCloud ex rel. Hall v. Goodyear Dunlop Tires N. Am., LTD*, 479 F. Supp. 2d 882 (C.D. Ill. 2007), the same defendant argued a similar *Daubert* motion that the court denied after holding a *Daubert* hearing. Plaintiffs have submitted Woehrle's supplemental and rebuttal report, which includes recent testing he conducted to address Defendant's concerns. The court has given Defendant permission to redepose Woehrle based on the new reports submitted (Doc. # 191), but no such permission has been sought.

Based on the information and arguments currently available, it is not possible to resolve this motion (and the summary judgment motion linked to it) without a *Daubert* hearing. The parties shall be prepared to discuss scheduling a *Daubert* hearing at the pretrial conference.

### D.   Defendant's Motion for Summary Judgment (Doc. # 149)

Because Defendant's summary judgment motion hinges solely on the exclusion of Woehrle's expert testimony, further analysis is necessary after the *Daubert* hearing.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1) Goodyear/Dunlop's Motion to Exclude Certain Factual and Expert Opinion Testimony of Dr. David Herrick (Doc. # 145) is DENIED.

(2) Goodyear/Dunlop's Motion to Exclude Certain Factual and Expert Opinion Testimony of Wayne McCracken (Doc. # 146) is DENIED.

(3) Goodyear/Dunlop's Motion for Summary Judgment (Doc. # 149) is DENIED as MOOT as it relates to previously dismissed Defendant Goodyear Tire & Rubber; ruling is otherwise RESERVED.

(4) Defendant Goodyear/Dunlop's *Daubert* Motion to Exclude Woehrle's Expert Testimony (Doc. #150) is DENIED as MOOT as it relates to previously

dismissed Defendant Goodyear Tire & Rubber; otherwise ruling is DEFERRED pending a *Daubert* hearing.

(5) Plaintiffs' Motion to Strike and/or Exclude Certain Testimony of Gary Bolden (Docs. # 151 & 152) is DENIED.

DONE this 22nd day of October, 2013.

                                                  /s/ W. Keith Watkins
                                   CHIEF UNITED STATES DISTRICT JUDGE