IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM M. HENDERSON,         ) | |
| ) | |
| Plaintiff,         ) | |
| ) | |
| v.         ) | CASE NO. 3:11-CV-295-WKW |
| ) | |
| GOODYEAR DUNLOP TIRES         ) | |
| NORTH AMERICA, LTD.,         ) | |
| ) | |
| Defendant.         ) | |
| _____ | |
| PAMELA STAFFORD,         ) | |
| ) | |
| Plaintiff,         ) | |
| ) | |
| v.         ) | CASE NO. 3:12-CV-510-WKW |
| ) | [WO] |
| GOODYEAR DUNLOP TIRES         ) | |
| NORTH AMERICA, LTD.,         ) | |
| ) | |
| Defendant.         ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant's motion for summary judgment (Doc. # 149) and motion *in limine* to exclude Plaintiffs' expert, William Woehrle on the basis of *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). (Doc. # 150). The motions are fully briefed. (Docs. # 168, 169, 170, 172.) A *Daubert* hearing was held on November 20, 2013. Based on Mr. Woehrle's testimony in court and

the reasons that follow, Defendant's *Daubert* motion is due to be granted in part and denied in part and the motion for summary judgment is due to be denied.

## I. Defendant's *Daubert* Motion

### A. Design Defects

Defendant argues that Plaintiffs' expert, William Woehrle, is not qualified to testify as to the alleged design defects of the subject tire. Mr. Woehrle contends that the deflation was caused by a design defect he describes as "insufficient skim rubber thickness over the chafer fabric." During the *Daubert* hearing, Plaintiffs withdrew their claim alleging a design defect, and thus, any testimony regarding the chafer fabric of the subject tire will not be admissible. Accordingly, Defendant's motion to exclude testimony by Mr. Woehrle regarding the design defects of the subject tire is due to be granted.

### B. Manufacturing Defects

#### 1. *Qualifications*

Defendant further argues that Mr. Woehrle is not qualified to testify as to the alleged manufacturing defects of the subject tire. Mr. Woehrle contends that the deflation is attributable to two manufacturing defects – "nonfill in the bead heel" and "toe ring flash on the bead face." Defendant argues that "Mr. Woehrle is not qualified to render such opinions through knowledge, skill, experience, training, or

education" because he does not have an engineering degree or license and he has never designed a motorcycle tire.

Under Rule 702 of the Federal Rules of Evidence and *Daubert*, the trial court plays a "gatekeeping role" to ensure that all scientific testimony or evidence admitted is not only relevant, but also reliable. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

*Fed. R. Evid. 702; see also Daubert*, 509 U.S. at 579.

Scientific and/or technical evidence is reliable if it is based on an assertion that is grounded in methods of science. "The test for reliability 'is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Daubert*, 509 U.S. at 595–96; *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). The Supreme Court further has recognized that there is a range in which experts might reasonably differ on issues of science, and that such conflicting evidence should be admitted, not excluded, to aid the jury in deciding those issues. *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999)*;*

*accord Globetti v. Sandoz Pharm. Corp.*, 111 F. Supp. 2d 1174, 1177 (N.D. Ala. 2000) ("It is not part of the trial judge's gatekeeping role to determine whether the proffered opinion is scientifically correct or certain in the way one might think of the law of gravity. The gatekeeping role is addressed to mere evidentiary admissibility; it is the fact-finder's role (usually a jury) to determine whether the opinion is correct or worthy of credence.").

As noted in Plaintiffs' briefs, as well as during the testimony heard in court, Mr. Woehrle has extensive experience in tire manufacturing and failure analysis and thus, is qualified to testify as to defects in motorcycle tires. Mr. Woehrle's experience with tires is vast. From 1966 to 1991, he was employed by Uniroyal and Uniroyal-Goodrich Tire Company. While employed by Uniroyal, he held a variety of positions, all of which involved examining, investigating, analyzing, testing, and reporting tire failures. In 1966, when he started at Uniroyal, he was the Development Engineer in Advanced Tire Products for three years. As the development engineer, he analyzed tire failures and developed special methods for measuring and analyzing tire performance.

In 1969, he was assigned to the Uniroyal proving grounds in Laredo, Texas, where he was the sole engineer on site. As the resident engineer, he provided the engineering support for a test center that ran ten million miles annually, operated 100 test vehicles, and employed 200 people. He examined failed and worn tires

that were run on various durability, wear, and hazard tests. In 1972, he became a project manager working with tire and vehicle centers (dealers) on a program to evaluate and improve the ride and handling quality of vehicles. As the project manager, he analyzed failed tires and warranty returns to determine why the tires had failed. In 1976, he was transferred to Automotive Account Engineer, where he coordinated tire engineering criteria of Uniroyal's largest customer, General Motors. There, he inspected failed tires that were returned from vehicle manufacturer's qualification tests, and he reported his analysis based on inspections as to why the tires failed to meet industry standards.

In 1978, he became manager of industry standards. He coordinated with other tire companies, vehicle manufacturers, testing companies, and government agencies at key industry committees to set technical standards for tires. During that time he also analyzed and reported on failed tires to respond to liability claims on behalf of Uniroyal. In 1984, he became manager of testing services. This department was in charge of all tire testing, except for proving grounds. As a part of that team, Mr. Woehrle conducted various tests, including durability tests. During durability testing, he would test tires to the point that they either wore out or failed. Following the durability tests, he would evaluate and analyze the tires to draw a conclusion as to why the tires failed.

In 1987, he was promoted to director of product evaluation, the department responsible for all aspects of tire testing, including the proving grounds. At Uniroyal, he tested a variety of tires, including experimental tires (which reflected new concepts), developmental tires (tires in the process of becoming production tires), and production tires (tires that were being made and sold at that time). Some of the tests were designed to either wear out or fail the tire. Other tests were not designed to either wear out or fail the tire, but the tire would occasionally fail during the testing.

In addition to his education and training, Mr. Woehrle has served as the chairman, president, and member of numerous professional affiliations. He is the chairman of the Highway Tire Committee of the Society of Automotive Engineers. He is a past president of the Tire and Rim Association, a past chairman of the Tire Engineering Policy Committee of the Rubber Manufacturers Association, and a past chairman of Working Groups in the International Standards Organization. He has given numerous technical reports, presentations, and written several published articles on various tire issues, including failure analysis. Based on these qualifications, the court determines that Mr. Woehrle has the relevant knowledge, skill, experience, and training to testify as an expert.

### 2. *Methodology*

Defendant also contends that Mr. Woehrle's methodology is unreliable and unsupported. The trial judge's gatekeeping inquiry, when analyzing *Daubert* challenges, "avoids usurping the role of the trier of fact, because the court's 'focus . . . must be solely on principles and methodology, not on the conclusions that they generate.'" *Rudd v. Gen. Motors Corp.*, 127 F. Supp. 2d 1330, 1335 (M.D. Ala. 2001) (quoting *Daubert*, 509 U.S. at 595). The court must screen expert testimony to ensure that it stems from not just a reliable methodology, but also a sufficient factual basis and reliable application of the methodology to the facts. *Id.* at 1337.

Here, in addition to conducting a detailed visual, tactile, and diagnostic examination of the subject tire prior to rendering his opinions, Mr. Woehrle also conducted a differential diagnosis whereby he eliminated other potential causes of failure based on the absence or presence of other certain signs on the subject tire. Such a process of elimination is an appropriate and accepted methodology. *See Esposito v. Home Depot U.S.A., Inc.*, No. 06–153–S, 2010 WL 5173338, at *2 (Rhode Island Dec. 14, 2010). In the engineering field, the elimination methodology has been endorsed by several other courts explicitly and by the Supreme Court implicitly. *See Kumho Tire*, 526 U.S. at 156 (suggesting that a "visual examination and process of elimination" analysis would be an appropriate methodology for a tire engineer); *see also Abrams v. Ciba Specialty Chems. Corp.*,

7

No. 08–0068–WS–B, 2010 WL 779276, at *6 (S.D. Ala. Mar. 2, 2010) (admitting testimony of chemical engineer who opined on the cause of contamination in the plaintiffs' home based on "a process of elimination that rejected or minimized all other alternative sources").

Ultimately, Mr. Woehrle's vast experience with tire manufacture and failure analysis as well as the methodology he employed to reach his opinions, satisfies *Daubert*. Thus, his testimony is admissible at trial. Accordingly, Defendant's motion *in limine* to exclude Mr. Woehrle's testimony relating to the alleged manufacturing defects in the subject tire is due to be denied.

## II. Defendant's Summary Judgment Motion

Defendant based its summary judgment motion on the inadmissibility of Mr. Woehrle's expert testimony. Based on the foregoing *Daubert* analysis, there is a genuine dispute of material fact precluding summary judgment. *See* Fed. R. Evid. 56(a). Accordingly, the motion is due to be denied.

## III. Conclusion

It is ORDERED that: (1) Defendant's *Daubert* motion/motion *in limine* is GRANTED IN PART and DENIED IN PART as set out in this opinion and order; and (2) Defendant's motion for summary judgment is DENIED.

DONE this 21st day of November, 2013.

                                         /s/ W. Keith Watkins
                                 CHIEF UNITED STATES DISTRICT JUDGE